UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-10057-MOORE/Elfenbein

**BENJAMIN BOE**,

    Plaintiff,

v.

**OFFICER JULIAN GARCIA**, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on *pro se* Plaintiff Benjamin Boe's Complaint ("Complaint"), ECF No. [1]; his Motion for Leave to Proceed *in forma pauperis* ("IFP Motion"), ECF No. [3]; his Motion for Leave to Proceed under Pseudonym and for a Protective Order ("Motion to Proceed Under Pseudonym"), ECF No. [4]; his Motion for Referral to Volunteer Attorney Program ("Motion for Referral to VAP"), ECF No. [5]; and his Motion for Update, ECF No. [8]. The Honorable K. Michael Moore has referred this case to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and for a Report and Recommendation on any dispositive matters." ECF No. [7].

Because Plaintiff has not paid the Court's filing fee, the screening provisions of 28 U.S.C. § 1915(e) apply.[1] Under that statute, a court must dismiss the case if the court "at any time . . .

---

[1] Though the plain language of the statute appears to make its provision applicable only to prisoners, "[t]he screening process under 28 U.S.C. § 1915 applies to non-prisoner pro se litigants who are proceeding in forma pauperis." *Fletcher v. President of Albert Einstein Med. Ctr.*, No. 15-24355-CIV, 2016 WL 11547296, at *1 (S.D. Fla. Feb. 10, 2016), *R. & R. approved*, No. 15-24355-CIV, 2016 WL 11547297 (S.D. Fla. Apr. 5, 2016); *see also Neitzke v. Williams*, 490 U.S. 319, 329 (1989) (noting "Congress' over-arching goal in enacting the *in forma pauperis* statute" was "to assure equality of consideration for all litigants" (quotation marks omitted)); *Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (finding no error in the

determines that . . . the action or appeal . . . is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). After reviewing the pleadings, record, and relevant law, I recommend the Complaint, **ECF No. [1]**, be **DISMISSED WITHOUT PREJUDICE** pursuant § 1915(e)(2)(ii). I also recommend the IFP Motion, **ECF No. [3]**; the Motion to Proceed Under Pseudonym, **ECF No. [4]**; the Motion for Referral to VAP, **ECF No. [5]**; and the Motion for Update, **ECF No. [8]**, all be **DENIED as moot**.

I.     BACKGROUND

In the Complaint, Plaintiff sues seven defendants: (1) Officer Julian Garcia ("Garcia") of the "Islamorada Police Department"[2]; (2) Deputy Wardell Hanna ("Hanna") of the Monroe County Sheriff's Office; (3) Sergeant Edward Askins ("Askins") of the Islamorada Police Department; (4) Brittany Brown ("Brown"), Records Supervisor of the Monroe County Sheriff's Office; (5) an Unknown FOIA Officer/Records Clerk with the Islamorada Police Department; (6) the Village of Islamorada; and (7) the Monroe County Sheriff's Office. *See* ECF No. [1] at 1–2. Plaintiff alleges[3]

---

district court's dismissal of a non-prisoner's complaint under § 1915(e)(2)(B)(ii)); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("Reasonable access to the courts is provided to indigent claimants by the in forma pauperis (IFP) statute, 28 U.S.C. sec. 1915 *et seq.,* which allows commencement of suits without payment of fees and court costs by a person who makes an affidavit that he is unable to pay the costs.").

[2] Plaintiff alleges some defendant officers work for the "Islamorada Police Department," but no such entity exists. Instead, "[p]olice services to Islamorada Village of Islands are provided by contract through" the "Sheriff of Monroe County, Florida." Sheriff, Islamorada Village of Islands, https://www.islamorada.fl.us/325/Sheriff (last visited Aug. 13, 2024); *see also* Islamorada, Fla., Village Code ch. 1, § 1-2 ("[T]he term 'police' shall mean the Monroe County Sheriff's Office serving as the Village police.").

[3] When screening a complaint under § 1915(e), the Court "must accept the plaintiff's allegations as true but need not accept legal conclusions." *White v. Lemma*, 947 F.3d 1373, 1380 (11th Cir. 2020); *see also Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting, in the context of § 1915(e), that a "complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief"). With that context, the Court lays out the screening facts without repeating the "Plaintiff alleges" lead-in language.

he "recorded the following interaction": Defendant Garcia "falsely detained" him and a companion he calls Jane Doe, during which time Garcia issued Doe a citation for running a stop sign. *See* ECF No. [1] at 4. Garcia did not wear a nametag identifying himself as an officer and refused to identify himself by name or badge number despite being asked. *See* ECF No. [1] at 4. When the traffic stop concluded, Garcia told Plaintiff and Doe they were "good to go" and got back in his squad car. *See* ECF No. [1] at 4. Plaintiff then got out of his car, and Garcia used his car's PA system to tell Plaintiff to get back inside it. *See* ECF No. [1] at 4.

Afterward, Doe parked about forty feet behind Garcia's squad car and called 911 to report Garcia either for "impersonating an officer" or for refusing to identify himself against department policy. *See* ECF No. [1] at 4. Garcia then got out of his car, approached Plaintiff's car with his gun aimed at Plaintiff, banged his gun against the passenger window, yanked the door open, and pointed his gun at both Plaintiff and Doe. *See* ECF No. [1] at 4. At some point, Garcia switched to his taser and aimed that at Plaintiff even though Plaintiff was "unarmed and peaceful." *See* ECF No. [1] at 4. Plaintiff and Doe asked if they were "under arrest or being detained," but Garcia was "unresponsive." *See* ECF No. [1] at 4. Plaintiff and Doe "feared for their lives." *See* ECF No. [1] at 4. But Garcia "illegally detained" Plaintiff and Doe "with his gun drawn even though" they were not threatening, they had no weapon, and the traffic stop had ended. *See* ECF No. [1] at 4. Garcia also "retaliated against" them "for exercising their rights of freedom of speech and petitioning the government/calling the police" on him. *See* ECF No. [1] at 4.

Defendant Hanna arrived "[m]inutes later," at which point Plaintiff exited his car and "stood outside the passenger door recording." *See* ECF No. [1] at 4. Neither officer told Plaintiff to stay in his car or that he was being arrested or detained, but Hanna "illegally detained" Plaintiff by locking him in a squad car and "later lied" about it by claiming he detained Plaintiff for not

3

following lawful orders. *See* ECF No. [1] at 4. Hanna handcuffed Plaintiff too tightly, which caused wrist pain and visual red marks over the 30 minutes he was in Hanna's squad car. *See* ECF No. [1] at 4. Hanna also refused to identify himself or give his badge number despite Plaintiff repeatedly asking him for that information; instead, Hanna "retaliat[ed] against" him for exercising his rights by keeping him detained unlawfully." *See* ECF No. [1] at 4–5.

About 25 minutes later, Defendant Askins arrived at the scene and spoke to Garcia and Hanna privately. *See* ECF No. [1] at 5. Garcia and Hanna "confirmed" that Plaintiff had done "nothing," "had broken no laws," and "was peaceful," but Askins "continued to keep" him detained in a squad car. *See* ECF No. [1] at 5. When Askins asked for Plaintiff's "legal name," he asked "what crime he was suspected of committing and refused to" give it. *See* ECF No. [1] at 5. Askins replied, "Oh you want to be like that," "slammed the squad car door" in Plaintiff's face, and "made the decision to keep" him "detained for longer as an unlawful retaliatory punishment." *See* ECF No. [1] at 5. Askins also took Plaintiff's phone and told him, "You will comply." *See* ECF No. [1] at 5.

While Plaintiff was handcuffed in the squad car, Askins, Hanna, and Garcia "privately conversed and conspired." *See* ECF No. [1] at 5. After that conversation, Hanna and Garcia finally identified themselves to Plaintiff. *See* ECF No. [1] at 5. Between 15 and 30 minutes after Askins arrived, he released Plaintiff from the squad car. *See* ECF No. [1] at 5. But he "covered up each of the officer['s] misconduct by not allowing" Plaintiff to "file a complaint." *See* ECF No. [1] at 5. Askins did so — and "further[ed]" the officers' "conspiracy to violate" Plaintiff's "civil rights" — by falsely claiming he needed Plaintiff's legal name to file a complaint, when "department policy" permits "anonymous complaints." *See* ECF No. [1] at 5. Askins then "falsified his police report" by writing that Plaintiff "didn't want to file a complaint even though" he has "video of

4

attempting to file a complaint." *See* ECF No. [1] at 5.

Less than a week later, Plaintiff and Doe "filed Litigation Holds" demanding that "all related records be retained and not destroyed." *See* ECF No. [1] at 5. They also made Freedom of Information Act ("FOIA") requests for the officers' body and dash camera videos. *See* ECF No. [1] at 5. Officer Brittany Brown "originally" told them "she had several body camera and dash videos," but those videos later "conveniently 'malfunctioned' before" Plaintiff "could obtain them. *See* ECF No. [1] at 5. "In furtherance of the officer's conspiracy to violate" Plaintiff's "civil rights," Brown and the Unknown FOIA Officer "aided in covering up the officer's misconduct by destroying video evidence." *See* ECF No. [1] at 5. Hanna "also intentionally destroyed both his dash camera and body worn camera to cover up police misconduct." *See* ECF No. [1] at 5.

Finally, the Village of Islamorada and the Monroe County Sheriff's Office have the "following practices, policies and customs: arbitrary use of excessive force against civilians; a code of silence in which police officers fail to report police misconduct; preparing false and incomplete police reports, and/or not preparing police reports, to cover up police misconduct including but not limited to unconstitutional searches and seizures; [f]alsely detaining, filing false charges and pursuing baseless prosecutions in order to protect police officers from claims of improper conduct and avoid liability; failing to adequately train, supervise and discipline police officers in the categories and fields of police work addressed above; failing to adequately investigate citizen complaints against police officers; and failing to adequately discipline police officers for misconduct." *See* ECF No. [1] at 6. "The actions of the officer Defendants . . . were done pursuant to, and as a result of," these "de facto practices, policies and customs," which the Village of Islamorada and the Monroe County Sheriff's Office had "actual knowledge of." *See* ECF No. [1] at 6. The "municipal policy-makers of the Village of Islamorada and" the Monroe

5

County Sheriff's Office "acted with deliberate indifference in maintaining, overlooking and preserving" these "unconstitutional practices, policies and customs." *See* ECF No. [1] at 6.

Plaintiff's allegations are difficult to parse into legal claims, but throughout the Complaint Plaintiff drops in many legal terms and phrases of art, including: "Excessive Force," "Battery," "Assault," "Unlawful Retaliation," "Illegal Search of Vehicle," "False Imprisonment," "Failure to Intervene," "Unlawful Imprisonment," "Retaliation," "Conspiracy to violate Constitutional Rights," "Unreasonable/Illegal Search," "Spoliation of Evidence," "Destruction of Evidence," "Intentional Infliction of Emotional Distress," and "*Monell* claim." *See* ECF No. [1] at 4–6. Plaintiff also asserts that the individual Defendants' "misconduct" was "extreme," "outrageous," and "undertaken with malice, willfulness, and reckless indifference" to his rights and that, as a "proximate result of Defendants' wrongful acts," he "suffered damages, including severe emotional distress and anguish." *See* ECF No. [1] at 4–6. And that because the Village of Islamorada and the Monroe County Sheriff's Office "failed to act to remedy a pattern of abuse so widespread it amounts to a custom or policy," those entities are "the moving force behind Plaintiff's deprivation of rights." *See* ECF No. [1] at 6.

## II. LEGAL STANDARDS

Because Plaintiff has not paid the Court's filing fee, the screening provisions of 28 U.S.C. § 1915(e) apply. *See Fletcher*, 2016 WL 11547296, at *1; *Troville*, 303 F.3d at 1260; *Moon*, 863 F.2d at 837. That statute requires the Court to dismiss his case if it is "frivolous or malicious," 28 U.S.C. § 1915(e)(2)(i); "fails to state a claim on which relief may be granted," *id.* § 1915(e)(2)(ii); or "seeks monetary relief against a defendant who is immune from such relief," *id.* § 1915(e)(2)(iii). The Court is mindful that "[p]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*,

350 F.3d 1157, 1160 (11th Cir. 2003). "Still, once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon*, 863 F.2d at 837.

A claim is frivolous if it "realistically has no better than a slight chance of success" or "lacks an arguable basis" in law or "in fact, for example, [by] asserting fantastic facts." *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 640 n.1 (11th Cir. 1990); *see also Neitzke*, 490 U.S. at 327–28 (explaining that under § 1915 a claim is frivolous if it is "based on an indisputably meritless legal theory," like when it asserts "claims against which it is clear that the defendants are immune from suit and claims of infringement of a legal interest which clearly does not exist," or on "factual contentions" that "are clearly baseless," like those that include "delusional scenarios"); *cf. Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (noting that "wildly implausible allegations in the complaint should not be taken to be true").

To state a claim for relief, a pleading "must contain" three substantive parts: (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) "a demand for the relief sought." *See* Fed. R. Civ. P. 8(a). Along with that substance, a pleading must also conform to certain format requirements. *See* Fed. R. Civ. P. 10. Relevant here, a complaint "must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b). Those substance and format requirements are aimed at ensuring that a complaint contains "sufficient factual matter, accepted as true," *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to both "state a claim to relief that is plausible on its face" and "give the defendant fair notice of what the claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration adopted, quotation marks omitted).

"[D]istrict courts have the power and the duty to define the issues at the earliest stages of litigation," which includes the responsibility of dismissing or requiring a party to correct shotgun pleadings. *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).[4] The Eleventh Circuit has identified at least four different types of shotgun pleadings, including complaints that fail to "separat[e] into a different count each cause of action or claim for relief" and complaints that "assert[] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323 (footnotes omitted). It has also "condemned shotgun pleadings time and again" because they "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356–57 (11th Cir. 2018) (citation omitted); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

Given the havoc they wreak, the Eleventh Circuit has specifically instructed district courts not to tolerate shotgun pleadings because "[t]olerating such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("[S]hotgun complaints . . . are altogether unacceptable.").

---

[4] A shotgun pleading is one that "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a responsi[ve] pleading constitutes shotgun pleading.").

8

It has made clear that a district court that receives a shotgun pleading, at minimum, "must intervene *sua sponte* and order a repleader." *See Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001), *abrogated on other grounds by*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). And if the claims of a complaint "are so poorly pleaded that" it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief," *see Weiland*, 792 F.3d at 1325 (emphasis and quotation marks omitted), a district court "retains authority to dismiss a shotgun pleading on that basis alone," *see Jackson*, 898 F.3d at 1357.

"Capacity to sue or be sued is determined . . . for an individual who is not acting in a representative capacity, by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). For parties who are not individuals acting in a representative capacity and that are not corporations, *see* Fed. R. Civ. P. 17(b)(1)–(2), capacity to sue or be sued is determined "by the law of the state where the court is located," *see* Fed. R. Civ. P. 17(b)(3). Under Florida law, counties, municipalities, and their officers are not absolutely immune from suit.[5] *See, e.g.*, *Brown v. Jenne*, 941 So. 2d 447, 451 (Fla. 4th DCA 2006) ("[C]ounties and thus their employees may not claim sovereign immunity to a section 1983 claim."); *S. All. Corp. v. City of Winter Haven*, 505 So. 2d 489, 493 (Fla. 2d DCA 1987) ("[U]nder § 1983, a municipality has no immunity from damages

---

[5] Instead, a plaintiff can "recover damages in tort for money damages against" counties and municipalities "for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant." Fla. Stat. § 768.28(1), (2); *see also Cauley v. City of Jacksonville*, 403 So. 2d 379, 387 (Fla. 1981) (noting that "section 768.28 imposes a $50,000/$100,000 ceiling on tort recovery against" counties and municipalities). And a plaintiff can recover from a county or municipal law enforcement officer if the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* Fla. Stat. § 768.28(9)(a). Similarly, under federal law, counties and municipalities are "responsible under § 1983" for monetary damages when "execution of [their] policy or custom . . . inflicts the injury" to the plaintiff, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), and officers sued in their individual capacities are liable under § 1983 for monetary damages when their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known," *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).

flowing from its unconstitutional acts and may not assert the good faith of its officers or agents as a defense to liability under § 1983." (citation omitted)).  Officers sued in their official capacities, however, cannot be personally liable for money damages because "a suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him" and "local government units can be sued directly."  *Gualtieri v. Bogle*, 343 So. 3d 1267, 1271 (Fla. 2d DCA 2022) (alteration adopted, quotation marks omitted); *see also* Fla. Stat. § 768.28(9)(a).

### III.   DISCUSSION

Section 1915(e)(2) requires the Court to dismiss Plaintiff's case if it is "frivolous or malicious," 28 U.S.C. § 1915(e)(2)(i); "fails to state a claim on which relief may be granted," *id.* § 1915(e)(2)(ii); or "seeks monetary relief against a defendant who is immune from such relief," *id.* § 1915(e)(2)(iii).

As an initial matter, Plaintiff's lawsuit does not seek monetary relief against a defendant who is immune from that relief.  Defendants are a municipality, *Fla. Dep't of Revenue v. City of Gainesville*, 918 So. 2d 250, 269 n.14 (Fla. 2005) (noting the Village of Islamorada is a municipality), a county entity, *see Beard v. Hambrick*, 396 So. 2d 708, 711 (Fla. 1981) (finding a sheriff is a county official); *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (noting when the "defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, Monroe County"), and municipal or county officers.  None of those entities or individuals is absolutely immune from suit.  *See Brown*, 941 So. 2d at 451; *S. All. Corp.*, 505 So. 2d at 493; *Gualtieri*, 343 So. 3d at 1271; Fla. Stat. § 768.28 (1), (2), (9)(a).  As a result, Plaintiff's lawsuit is not subject to dismissal under § 1915(e)(2)(iii).

Nor is Plaintiff's lawsuit frivolous.  It is not "based on an indisputably meritless legal

theory" because, as just explained, Plaintiff does not assert claims against which Defendants are absolutely immune from suit. *See Neitzke*, 490 U.S. at 327. He also does not assert "claims of infringement of a legal interest which clearly does not exist." *See id.* Regardless of whether Plaintiff can prove the claims he asserts—or even state a claim as required under Rule 12(b)(6) as discussed below—the legal interests he describes certainly exist. *See* ECF No. [1] at 4–6 (liberally construed, describing rights to be free from excessive force, retaliation, illegal search, false imprisonment, and battery). Finally, it is not based on "factual contentions" that "are clearly baseless." *See Neitzke*, 490 U.S. at 327. The facts Plaintiff alleges against Defendants — that they, among other things, aimed a gun at him while he was unarmed and peaceful, detained him in tight handcuffs though he had not committed a crime, and destroyed video evidence that would have proven his claims — are not "delusional," *id.* at 328; "fantastic," *Clark*, 915 F.2d at 640 n.1; or "wildly implausible," *Miller*, 541 F.3d at 1100. Thus, Plaintiff's lawsuit is likewise not subject to dismissal under § 1915(e)(2)(i).

Where Plaintiff's Complaint falters, however, is under § 1915(e)(2)(ii), which requires him to state a claim on which relief may be granted. Every complaint, whether filed by a *pro se* party or an attorney, must comply with the Federal Rules of Civil Procedure. *See Moon*, 863 F.2d at 837. That means Plaintiff's Complaint must conform with Rule 8, which requires him to give a short and plain statement of his claims showing he is entitled to relief, *see* Fed. R. Civ. P. 8(a), and with Rule 10, which requires him to state those claims in a series of numbered paragraphs and to limit each paragraph to a single set of circumstances, *see* Fed. R. Civ. P. 10(b). He has not done so.

Instead, Plaintiff's Complaint is one long narrative spanning three pages and several time periods. *See* ECF No. [1] at 4–6. While the Complaint is separated into paragraphs, they are

neither numbered nor limited to single set of circumstances — they interweave details about the traffic stop, a later FOIA request, the alleged motivations and mindsets of the individual Defendants, the alleged policies and practices of the institutional Defendants, and Plaintiff's alleged resultant injuries. *See* ECF No. [1] at 4–6. And while the Complaint uses legal buzzwords that could be causes of action, it does not sufficiently link those potential causes of action to a particular Defendant or Defendants. *See* ECF No. [1] at 4–6. In those ways, the Complaint is a shotgun pleading twice over: it fails to separate into a different count each cause of action or claim for relief, and it asserts multiple claims against multiple Defendants without specifying which Defendant or Defendants each claim is brought against. *See Weiland*, 792 F.3d at 1323.

Because Plaintiff does not properly separate and direct his claims, Defendants do not have fair notice of the claims against them. *See Twombly*, 550 U.S. at 555, 570. This is a problem particularly as it relates to the officer Defendants — Plaintiff does not specify whether he is suing them in their official or individual capacities, *see* ECF No. [1] at 4–6, so they do not know whether they might be personally liable for any money judgment rendered against them or not, *see Pearson*, 555 U.S. 223 at 231; *Gualtieri*, 343 So. 3d at 1271; Fla. Stat. § 768.28(9)(a). Plaintiff also does not specify whether he brings his claims under federal or state law, *see* ECF No. [1] at 4–6, a detail that affects both the elements he must prove to obtain relief and the relief to which he may be entitled, *see* Fla. Stat. § 768.28(1), (2), 9(a); *Monell*, 436 U.S. at 694; *Pearson*, 555 U.S. at 231; *Cauley*, 403 So. 2d at 387.

Although the Court must read Plaintiff's *pro se* Complaint liberally, *see Hughes*, 350 F.3d at 1160, the Court is not required to serve as Plaintiff's "lawyer in rewriting" it, *see Jackson*, 898 F.3d at 1357. Indeed, the Eleventh Circuit has made abundantly clear district courts must not tolerate shotgun pleadings and instead must require *the plaintiff* to correct the pleading's

deficiencies, such as by dismissing it without prejudice, *see id.*, or by "order[ing] a repleader," *see Byrne*, 261 F.3d at 1133. These actions both fulfill the district court's "duty to define the issues at the earliest stages of litigation," *see Johnson Enters.*, 162 F.3d at 1290, and ensure discovery is controlled and the docket is manageable, *see Anderson*, 77 F.3d at 367.

In sum, Plaintiff's Complaint should be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(ii) for failing to state a claim on which relief may be granted.

## IV. CONCLUSION

For the above reasons, I respectfully **RECOMMEND** that**:**

1. Plaintiff's *pro se* complaint, **ECF No. [1]**, be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(ii).

2. Plaintiff's Motion for Leave to Proceed *in forma pauperis*, **ECF No. [3]**, be **DENIED AS MOOT**.

3. Plaintiff's Motion for Leave to Proceed under Pseudonym and for a Protective Order, **ECF No. [4]**, be **DENIED AS MOOT**.

4. Plaintiff's Motion for Referral to Volunteer Attorney Program, **ECF No. [5]**, be **DENIED AS MOOT**.

5. Plaintiff's Motion for Update, **ECF No. [8]**, be **DENIED AS MOOT**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except on grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885

CASE NO. 24-CV-10057-MOORE/Elfenbein

F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 13, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:

All Counsel of Record

Benjamin Boe
2714 Dougall Road
Joliet, IL 60433
*PRO SE*